UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-92-MOC

| | |
|---|---|
| **TRAVIS W. MAUCK,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security**, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff Travis W. Mauck's Motion for Summary Judgment (#17) filed on June 11, 2022, and Defendant Commissioner's Motion for Summary Judgment (#22) filed on April 11, 2022. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative review decision on his application for disability insurance benefits.

For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

### I.   BACKGROUND

On July 24, 2009, Travis W. Mauck ("Plaintiff") filed an application for Title II Disability Insurance Benefits, alleging disability beginning March 13, 2009, due to rods and pins in the left arm, rods in the left leg, crushed left ankle, pins in the right wrist, seven broken ribs, a dislocated right leg, high blood pressure, and chronic anxiety. (Tr. at 57, 200, 224). Plaintiff was initially denied but found disabled on reconsideration beginning March 13, 2009 due to satisfying Paragraph B of Listing 1.06. (Tr. 16, 69–70).

1

On November 15, 2018, the State agency determined that medical improvement had occurred. (Tr. 114). Plaintiff requested a reconsideration of this determination on November 20, 2018. (Tr. 111). Plaintiff's claim was denied on June 10, 2019. (Tr. 125). Plaintiff then appeared and testified at a hearing held on January 14, 2020, without representation. (Tr. 37–66). After this hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision dated February 24, 2020. (Tr. 16–29). The ALJ's determination upheld the Agency's finding of medical improvement, finding that Plaintiff's disability ended on November 14, 2018. (Tr. 16, 28–29).

In his decision, the ALJ found Plaintiff's most recent favorable decision was the determination from April 27, 2010 (the Comparison Point Decision, or "CPD"), which found disability under Listing 1.06. (Tr. 18). He further found Plaintiff had not engaged in substantial gainful activity through the date of the decision. (Id.). He determined Plaintiff had the medically determinable impairments of fractures of the lower extremity, depression, anxiety, personality disorder, posttraumatic stress disorder ("PTSD"), obesity, dysfunction of the major joint of the shoulder, hypothyroidism, gastroesophageal reflux disease, and essential hypertension; which constituted Plaintiff's current impairments. (Id.).

The ALJ determined that, as of November 14, 2018, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). The ALJ also found medical improvement had occurred as of November 14, 2018. (Tr. 20). The ALJ determined that Plaintiff retained the RFC to perform sedentary work, except:

> [Plaintiff] is limited to lifting up to 10 pounds occasionally; standing and walking up to a total of two hours during an eight-hour workday; and sitting up to a total of six hours during an eight-hour workday. In addition, [Plaintiff] should never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance,

stoop, crouch, or kneel; never crawl; no use of moving machinery, or exposure to unprotected heights; work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple work-related decisions; and with few, if any, work place changes; capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting; and the individual can perform simple tasks for two hour blocks of time with normal rest breaks during an eight hour work day; with only occasional interaction with the public and coworkers.

(Tr. 22). The ALJ determined Plaintiff had no past relevant work, but he could perform other work in the national economy; namely assembler, bench hand worker, or nut sorter. (Tr. 27–28). Thus, the ALJ found Plaintiff not disabled. (Tr. 29).

Plaintiff appealed, but on February 2, 2021, the Appeals Council denied review, making the ALJ's unfavorable decision the final decision of the Commissioner. Plaintiff has exhausted all administrative remedies and now appeals the ALJ's decision.

**II.    STANDARD OF REVIEW**

Section 405(g) of Title 42 of the U.S. Code permits judicial review of the Social Security Commissioner's denial of social security benefits. The district court's primary function when reviewing a denial of benefits is to determine whether the ALJ's decision was supported by substantial evidence. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing 42 U.S.C. § 405(g); Knox v. Finch, 427 F. 2d 919, 920 (5th Cir. 1970)). A factual finding by the ALJ is only binding if the finding was reached by a proper standard or application of the law. See Coffman, 829 F.2d at 517 (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980); Williams v. Ribbicoff, 323 F.2d 231, 232 (5th Cir. 1963); Tyler v. Weinberger, 409 F. Supp. 776, 785 (E.D. Va. 1976)).

Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Smith v.

Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Put plainly, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). However, it has been determined that "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgement for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)).

When considering whether a claimant's disability continues, the Commissioner uses an eight-step sequential process to determine whether the claimant has met the burden of proving disability. The claimant must prove at step one that he is not undertaking substantial gainful activity. See 20 C.F.R. § 404.1594(f)(1). At step two, the ALJ must determine whether the claimant had an impairment or combination of impairments which meets or medically equals the criteria of a listed impairment. See 20 C.F.R. §§ 404.1520, 404.1525, 404.1526. At step three, the ALJ must determine whether medical improvement has occurred. See 20 C.F.R. § 404.1594(f)(3). At step four, the ALJ must determine whether the medical improvement was related to the ability to work. See 20 C.F.R. § 404.1594(f)(4). If the ALJ had determined at step three that no improvement had occurred, he goes on to step five, in which he determines if an exception to medical improvement applies. See 20 C.F.R. § 404.1594(f)(5). At step six, the ALJ must determine whether the claimant's current impairments were severe. See 20 C.F.R. § 404.1594(f)(6). At step seven, the ALJ must determine if, with the determined residual

functional capacity ("RFC"), the claimant could perform his past relevant work. See 20 C.F.R. § 404.1594(f)(7). At step eight, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work. See 20 C.F.R. § 404.1594(f)(8). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. Id. The Commissioner carries the burden of proof in termination cases. Thomas F. v. Comm'r, Soc. Sec. Admin., No. CV DLB-19-820, 2020 WL 1443566, at *5 (D. Md. Mar. 24, 2020).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Id. Residual functional capacity is the most someone can do despite their mental and physical limitations. 20 C.F.R. § 404.1545(a)(1). In order to determine RFC, the adjudicator is instructed to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R § 404.1545(a)(3).

The ALJ must build a logical bridge from the evidence to his conclusion. SSR 96-8p requires the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

The Fourth Circuit holds that, under this ruling, "'[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

In determining the plaintiff's RFC, "an ALJ 'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 61 Fed. Reg. at 34,478)). "In other words, the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods, 888 F.3d at 694 (quoting Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000))). In formulating the RFC, the ALJ may not just pick and choose from the evidence but must consider it in its entirety. Kirby v. Astrue, 731 F. Supp. 2d 453, 456 (E.D.N.C. 2010).

### III. FINDINGS AND CONCLUSIONS

Plaintiff alleges two assignments of error: (1) the ALJ's determination is the result of legal error because there is no comparison between the CPD evidence and the evidence in the record at the time of cessation; and (2) the ALJ's rejection of Dr. Burgess' opinion was legally improper.

**1. Plaintiff's contention that the ALJ's determination was legal error because there is no comparison between the CPD evidence and the evidence in the record at the time of cessation.**

A decision to terminate benefits "must be based on substantial evidence of medical improvement." Rhoten v. Bowen, 854 F.2d 667, 669 (4th Cir. 1988). Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled." 20 C.F.R. § 416.994(b)(1). Such a determination "must be based on changes (improvements) in the symptoms, signs, or laboratory findings associated with your impairment(s)." Id.; see also § 416.994(b)(7) (explaining that the SSA "will compare the current medical severity of th[e] impairment(s) ... to the medical severity of th[e] impairment(s) at th[e] time" of the most recent favorable decision), § 416.994(c)(1) (medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)").

The comparison of the records is essential "for a reasoned assessment of whether there is substantial evidence to support" a finding of improvement. Thomas F. v. Comm'r, 2020 WL 1443566, at *5 (D. Md. Mar. 24, 2020) (citing Veino v. Barnhart, 312 F.3d 578, 587 (2nd Cir. 2002)); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 308 (3d Cir. 2012) (explaining the "burden-shifting scheme" in Social Security termination cases, where the SSA carries the burden of showing "sufficient improvement" where a claimant has "introduce[d] [ ] evidence that his or her condition remains essentially the same as it was at the time of the earlier determination")).

In analyzing whether medical improvement has occurred, an ALJ must evaluate not only the current medical evidence, but also the medical evidence upon which the claimant's disability was premised. Without a comparison of the medical records in existence at the time of the CPD and Plaintiff's current medical records, the court is unable to determine whether substantial

evidence supports the ALJ's finding that medical improvement occurred. Ambler v. Saul, No. 5:18-CV-553-D, 2020 WL 733183, at *4 (E.D.N.C. Jan. 24, 2020), report and recommendation adopted, No. 5:18-CV-553-D, 2020 WL 728239 (E.D.N.C. Feb. 12, 2020) (citing Veino, 312 F.3d 578, 587 (2d Cir. 2002); Byron v. Heckler, 742 F.2d 1232, 1236 (10th Cir. 1984) ("In order for evidence of improvement to be present, there must also be an evaluation of the medical evidence for the original finding of disability."); Vaughn v. Heckler, 727 F.2d 1040, 1043 (11th Cir. 1984) (concluding the ALJ erred by focusing only on current evidence; "[w]ithout ... a comparison [of the medical records], no adequate finding of improvement could be rendered")).

Here, the Court finds that the ALJ's decision is based on legal error as there is no comparison between the CPD evidence and the evidence in the record at the time of cessation. The ALJ's entire analysis of evidence around the CPD is comprised of one paragraph, stating:

> The medical evidence supports a finding that, by November 14, 2018, there had been a decrease in medical severity of the impairment present at the time of the CPD. The evidence at the time of the CPD shows that the claimant sustained [] multiple fractures in a motor vehicle accident on March 14, 2009 (Exhibit 5F/1). Unfortunately, the claimant continued to have complications arising from an infected nonunion of the left distal tibia (Exhibit 15F). The claimant required multiple surgeries through March of 2010 (Exhibit 23F). On April 27, 2010, Perry Caviness, M.D. concluded that the claimant met listing 1.06 (A) (B).

(Tr. 20). This is the ALJ's entire recitation of facts leading up to the determination in 2010. While the ALJ does note the cause of disability, the ALJ does not describe any of the findings leading to disability or examinations from around this time. The ALJ then jumps to prison notes from seven years later, mental health treatment notes, and the examination of Stephen Burgess, M.D., in September of 2018. (Tr. 20–21). An ALJ must present "findings and determinations sufficiently articulated to permit meaningful judicial review." Testamark v. Berryhill, 736 F. App'x 395, 398 (4th Cir. 2018) (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)). The ALJ's lack of explanation here is legal error, requiring remand.

**2. Plaintiff's contention that the ALJ's rejection of Dr. Burgess' opinion was legally improper.**

Here, the ALJ relied on the examination of Dr. Burgess to find some medical improvement but rejected the opinion of Dr. Burgess that no medical improvement had occurred, and that Plaintiff's condition would continue to deteriorate over time. (Tr. 27). According to Plaintiff, the ALJ provides a handful of unsupported rationale for the rejection of Dr. Burgess' opinion, which deprives the decision of substantial evidence.

The Court agrees with Plaintiff that the ALJ did not explain adequately his reasons for rejecting Dr. Burgess' opinion. For example, the ALJ makes no reference to Dr. Burgess' examination, despite the significant findings relating to Plaintiff's ability to ambulate and ankle impairments including very antalgic gait, a non-moving foot, an inability to walk on the heel or toe of the left foot, difficulty with tandem gait, and an inability to fully squat. (Tr. 890–91).

As another example, the ALJ states that Dr. Burgess' opinion is "clearly inconsistent" with Plaintiff being able to "work in the prison kitchen." (Tr. 27). This is based on one prison note, which stated Plaintiff was tolerating work in the kitchen in February of 2017. (Tr. 812). Notably, it does not describe Plaintiff's work, how long he worked in a shift, what he did in the kitchen, how long he was doing this job, or anything other than the fact he was working in the kitchen. (Tr. 812). "[S]peculative evidence . . . [is not] substantial evidence." Biestek v. Berryhill, 139 S. Ct. 1148, 1160 (2019) (Gorsuch, Ginsburg, dissenting)). The ALJ's speculation as to what Plaintiff was doing, and how he was doing it, is not a legitimate rationale to reject a medical opinion.

In sum, the ALJ failed to sufficiently explain his reasons for rejecting Dr. Burgess' opinion regarding Plaintiff's lack of improvement.[1] Remand is also appropriate for this reason.

## IV. CONCLUSION

In sum, the Court agrees with Plaintiff that the ALJ erred by failing to evaluate the evidence prior to the CPD and compare that evidence with post-cessation findings. The ALJ also failed to sufficiently explain his reasons for rejecting Dr. Burgess' opinion regarding Plaintiff's lack of improvement. Thus, this matter is remanded for further administrative proceedings consistent with this Order.

Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment (#17) is **GRANTED**, Defendant's Motion for Summary Judgment (#22) is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

---

[1] The Court is not holding that the ALJ's rejection of Dr. Burgess' opinion was legal error, as Plaintiff contends. The Court is merely requiring further explanation from the ALJ as to why he rejected Dr. Burgess' opinion.

. Signed: May 6, 2022

Max O. Cogburn Jr
United States District Judge